No. 8703.

JULIAN v. THE HOOSIER DRILL COMPANY ET AL.

TRADE-MARK.—*Damages.*—*Injunction.*—Property in the use of a word as a trade-mark, to designate manufactured goods, such as the word "Hoosier," to distinguish a grain drill, may be acquired by adoption and exclusive use, and, when acquired, the unauthorized use by another of the mark, to designate similar goods, is a wrong which may be compensated by damages, and prevented by injunction.

SAME.—A trade-mark, used to designate goods manufactured under letters-patent, is assignable with the letters-patent, and the right to damages accrued for infringement is also assignable.

SAME.—*Non-User.*—*Abandonment.*—*License.*—Property in a trade-mark may be abandoned and thereby lost, but a complaint for infringement, which shows non-user for a year, does not disclose an intention to abandon; and without such intention there is no abandonment by mere non-user. Such non-user might possibly imply a gratuitous license to others to use the mark for the time being, and thereby preclude the recovery of damages for the time; but this license is revocable, and does not preclude the remedy by injunction for the future.

From the Wayne Circuit Court.

*T. J. Study, J. B. Julian* and *J. F. Julian,* for appellant.

—— *Wood,* —— *Boyd* and *H. C. Fox,* for appellees.

MORRIS, C.—The appellant brought this suit against The Hoosier Drill Company, to recover damages for an alleged infringement of her rights to the use of the word "Hoosier," as a trade-mark. John Ingels, as the administrator of Joseph Ingels, who refused to join with the appellant as plaintiff, was made a defendant to answer as to the interest of his intestate in the suit.

The first paragraph of the complaint states, that the appellant's assignor, Joseph Ingels, prior to the 20th day of March, 1876, invented and discovered certain new and useful inventions and improvements in grain drills, and that the same were secured to him by various letters-patent, issued by and out of the United States Patent Office at divers times, the first on the 6th day of January, 1863, and the last on the 4th day of October, 1870; that on or about the 6th of January,

1863, the said Joseph Ingels commenced the manufacture and sale of said grain drills in the town of Milton, Wayne county, Indiana, and continued the manufacture and sale of said drills down to the 20th day of January, 1876, during which time he manufactured 20,000 of said drills under said letters-patent; that, at the time said Ingels commenced the manufacture of said drills, he devised and adopted, as his trade-mark to be used, and which he used on said drills, to designate the grain drills which he was manufacturing and selling, the word "Hoosier" as the name of said drills, and that he affixed and inscribed the same to and upon all such drills by him manufactured and sold, and sold the same throughout this and the adjoining States of the Union, 'in which there was a great demand for them, as they were well known, and the "Hoosier Drill," so manufactured by him, was regarded as superior to any grain drill manufactured, by farmers, dealers in agricultural implements and those using the same; that neither at, nor prior to, the time said Joseph Ingels devised and adopted said word, symbol or term "Hoosier," as his trade-mark, was the same, nor had it been, used by any other person as a trade-mark upon any grain drill or drills; that said Ingels continued to own said trade-mark and letters-patent, and the right to manufacture grain drills under said letters-patent, and the exclusive right to use said trade-mark on grain drills, until the 27th of February, 1877; that from the 20th of March, 1876, to the 27th day of February, 1877, the Hoosier Drill Company was engaged in the manufacture of drills similar to those invented by said Joseph Ingels, and, without license so to do, unlawfully and wrongfully used and affixed to the drills manufactured by the appellee, during said period, said trade-mark, "Hoosier," and sold them with such trade-mark inscribed thereon, and that such trade-mark, so inscribed on said drills, enhanced the value of each drill upon which it was so inscribed, in the sum of two dollars, and that altogether said Joseph was damaged $5,000; that the said Hoosier Drill Company owed said sum to said Ingels, and

that, on the 27th day of February, 1877, he sold and transferred, for a valuable consideration, said claim to the appellant.

The second paragraph of the complaint is like the first, except that it alleges that Joseph Ingels devised and adopted the word "Hoosier" as a trade-mark in the year 1857, and that he was then engaged in the manufacture and sale of grain drills, and then, and continuously thereafter, until the 27th day of January, 1877; that he used on said drills by him manufactured and sold, as a trade-mark and name to designate the particular drill by him made and sold, the word "Hoosier." That on the 27th day of February, 1877, the said Ingels transferred and assigned to the appellant all of said letters-patent, by an instrument in writing, duly executed by him, and also all the right to and property in said trademark which he then had or owned, and the exclusive right to use said trade-mark upon grain drills.

It is then averred, that, from the time the appellant purchased said letters-patent and said trade-mark, she had the right to manufacture and sell grain drills with said trademark affixed thereto and inscribed thereon, and the exclusive right to use the same; that, ever since she became the owner of said trade-mark, the said Hoosier Drill Company has been engaged in the manufacture and sale of grain drills, similar in appearance and in all respects to the said grain drills manufactured and sold by said Ingels, and has, during all said time, manufactured and sold 10,000 of said drills with the trade-mark of the appellant affixed thereto and inscribed thereon, unlawfully, wrongfully and without leave or license so to do; that said trade-mark, so affixed by said company to said drills, enhanced the value of each drill two dollars; that, since she became the owner of said letters-patent and said trade-mark, it has been her intention to engage in and continue the manufacture and sale of grain drills under said letters-patent, and to use said trade-mark thereon, as soon as she could make arrangements so to do; that said trade-mark

Julian v. The Hoosier Drill Company et al.

was and is of great value in the sale of grain drills, and particularly in the sale of the drills manufactured by said Hoosier Drill Company; that said company had realized $5,000 from the use of said trade-mark since her purchase of the same, for which she demands judgment. She also asks that the appellee be enjoined, etc.

The appellee The Hoosier Drill Company appeared and demurred to the complaint, on the following grounds:

1. There is a misjoinder of causes of action in each of said paragraphs.

2. The plaintiff has no capacity to sue.

3. There is a defect of parties plaintiffs.

4. There is a defect of parties defendants.

5. The said paragraphs do not either of them state facts sufficient to constitute a cause of action against defendant.

The court sustained the demurrer, and, the appellant declining to amend, judgment was rendered for the appellee.

The sustaining of the demurrer is assigned as error.

It seems to be agreed by the counsel for the parties, that the word "Hoosier" may be adopted, used and applied as a trade-mark. The case of *Congress & Empire Spring Company* v. *High Rock Congress Spring Company*, 45 N. Y. 291, and other cases that might be referred to, fully justify this conclusion. Coddington on Trade-Marks, section 680, *et seq.*

It is not seriously questioned that Joseph Ingels used the word "Hoosier" as a trade-mark, and that, by affixing it to and inscribing it upon grain drills manufactured by him and sold in this and adjoining States, as alleged in the complaint, he adopted it as his trade-mark so as to secure the exclusive right to it as a trade-mark, to designate the kind of grain drills by him manufactured and sold.

It seems also to be agreed, that a party may have a property in a trade-mark, and that his right to and property in it may be transferred and assigned. But the parties are not agreed as to the manner in which, nor as to the circumstances under which, such assignment may be made.

It is insisted by the appellees that, upon the facts stated in the first paragraph of the complaint, no cause of action exists in favor of the appellant:

First.   Because it appears that, during the time the appellee used the trade-mark, the said Ingels, the appellant's assignor, was not engaged in manufacturing grain drills; that' he had abandoned the business of manufacturing and selling drills from the 20th day of March, 1876, until and after the 27th day of February, 1877, the period, as stated in said paragraph, during which the appellee used the same, and that he thereby relinquished and abandoned the use of said trade-mark to the public, so that any one had a right to use and adopt it.

Second.   Because the claim of the said Joseph Ingels to damages for the infringement of his right to said trade-mark was not assignable.

It is also insisted by the appellee that, upon the facts stated in the second paragraph of said complaint, there was no valid assignment to the appellant of said trade-mark; that, if there was a valid assignment, no damages are shown to have accrued to the appellant.

Assuming that Joseph Ingels had adequately appropriated the word "Hoosier" as a trade-mark, which, as before remarked, is hardly questioned by the appellees, that he had, as stated in the first paragraph of the complaint, ceased from the 20th of March, 1876, until the 27th of February, 1877, to manufacture and sell the grain drills to which he had been for years accustomed to affix the word as a trade-mark, can it be fairly and legally inferred that he had, by such temporary suspension of the business, abandoned to the public his right to and property in the trade-mark? We think not. The question of abandonment is one of intention, and the burden of establishing it lies upon the party who affirms it. Unless, therefore, it clearly and affirmatively appears from the facts stated in the complaint, it must be brought forward as a defence by answer. From the facts stated in the complaint, it

appears that Joseph Ingels had secured to him by letters-patent, the exclusive right as the original inventor to useful and valuable improvements in grain drills, which right, under such letters, had some years to run after the 27th of February, 1877. He had been, as the complaint avers, engaged for several years in the profitable manufacture and sale of his improved drill, and had at all times affixed to, and inscribed upon, such drills the word " Hoosier " as his trade-mark. In view of these facts, it can not be inferred, from less than a year's suspension of the business by Ingels, that he intended to abandon either the business or his right to said trade-mark. The suspension must be, presumptively at least, attributed to indisposition or inability, rather than to an intention to abandon valuable rights. Browne says that the question of abandonment is one of intention, and that "A person may temporarily lay aside his mark, and resume it, without having in the mean time lost his property in the right of user. Abandonment, being in the nature of a forfeiture, must be strictly proven." It is incumbent upon those alleging the defence of abandonment, to show that the right had been relinquished to the public by clear and unmistakable evidence. Browne on the Law of Trade-Marks, section 681 ; Dental Vulcanite Co. v. Wetherbee, 3 Fish. Pat. Cas. 87 ; American Hide, etc., Co. v. American Tool, etc., Co., 4 Fish. Pat. Cas. 284, 305.

In the latter case, SHEPLEY, J., in instructing the jury, says : " Abandonment means a general abandonment to the public, and must be shown affirmatively and positively as affecting the interest of the party." True, this was said as to the rights of a patentee, but the principle is the same whether applied to a patent or a trade-mark.

It is also insisted that as it is not alleged in the complaint that Joseph Ingels did not, at the time, know that the appellee was using said trade-mark, he must be presumed to have known it, and that it was his duty to object promptly to the appellee's usurpation of his rights, and that, if he did not, he must be held to have acquiesced, and thus estopped himself

to complain. The facts stated in the complaint do not show acquiescence on the part of Joseph Ingels in the alleged invasion of his rights by the Hoosier Drill Company. Did it affirmatively appear in the first paragraph of the complaint, that, with knowledge of the facts, Joseph Ingels had stood by and seen the appellee use his trade-mark without objection, though it would not establish abandonment, it would be a sufficient answer to the claim for the damages set forth in the first paragraph of the complaint. But such acquiescence is not alleged in the first paragraph of the complaint. If there was acquiescence on the part of Joseph Ingels, it must be shown by answer. Browne on the Law of Trade-marks, sections 684 and 685; *Taylor* v. *Carpenter*, 3 Story, 458; *Taylor* v. *Carpenter*, 2 Woodb. & M. 1; *Amoskeag Manf. Co.* v. *Spear*, 2 Sandf. 599.

We do not think it can be assumed from the facts stated in the complaint, that the alleged infringements of the rights of Joseph Ingels by the appellee resulted, at most, in but nominal damages to him. True, it must appear, in order to maintain the action to secure substantial relief, that substantial loss must have been sustained by him in consequence of the malappropriation of his trade-mark, but the ground of the action, the wrong, is the affixing of the trade-mark to drills which the public purchase, thereby erroneously supposing them to have been the product of Ingels. Browne Trade-Marks, secs. 499, 500. It is said that no certain and fixed rule for damages can be established in cases like this. *Taylor* v. *Carpenter*, 11 Paige, 292. Browne says, sec. 503: "The criterion is indemnity; and in estimating the actual damage, the rule is to give the value of the use of the thing during the illegal user, or, in other words, the amount of profits. * * The proper measure of damages, in case of violation of a trade-mark, is generally the profit realized upon the sales of goods to which the spurious marks were attached." We think we can not say, as matter of law, that, upon the facts stated in the first paragraph of the complaint, Ingels was not entitled to damages.

We also think it was competent for Ingels to sell and transfer, by assignment, his claim for damages to the appellant.

By section 783 of the code, the cause of action set forth in said paragraph would survive. Such a claim is assignable. Pomeroy on Remedies and Remedial Rights, section 147, and cases there cited.

We conclude that the court erred in sustaining the demurrer to the first paragraph of the complaint.

The objections to the second paragraph, urged by the appellee, are, that the facts stated do not show a valid assignment of the trade-mark to the appellant by Joseph Ingels, or that, if there was a valid assignment, she had, by non-user, abandoned her right.

It is alleged in the second, as well as in the first, paragraph of the complaint, that Joseph Ingels, by letters-patent, had secured the exclusive right to manufacture and sell the grain drills to which the trade-mark in question had been affixed for years; that, under those patents, he had been engaged in manufacturing the grain drills patented from 1863 to March, 1876, using the word "Hoosier," by affixing to his drills, as his trade-mark; that on the 17th day of January, 1877, Ingels transferred and assigned all of said letters-patent to the appellant, by an instrument in writing, duly executed by him, and also all the right to and property in said trade-mark, which said Ingels then had or owned, and the exclusive right to use said trade-mark upon grain drills.

This assignment and transfer carried with it to the assignee the exclusive right to manufacture and sell the grain drill specified in the letters-patent, and to carry on the business of making and selling the same. It was a transfer to appellant of the *right* to carry on the business in which Joseph Ingels had been engaged, and in connection with which he had used said trade-mark. As incident to the right thus transferred to the appellant, Joseph Ingels might, as he is averred to have done, assign to her his right to and property in said trade-mark. The assignment, and the right to make it, did not, in

any way, depend upon the time at which the appellant might engage in business. Nor was it necessary to the validity of the transfer of the trade-mark that the place of business or drills actually manufactured should be transferred. It was enough if the right to engage in the business was assigned; as incident to the assignment of this right, it was quite competent to assign the right to the trade-mark.

In the case of *The Dixon Crucible Co.* v. *Guggenheim*, 2 Brewster, 321, it was held that the property in a trade-mark will pass by an assignment, by operation of law, to any one who takes, at ·the same time, the *right* to manufacture or sell the particular merchandise to which the trade-mark has attached. *Edleston* v. *Vick*, 23 Eng. L. & Eq. 51, is not unlike this case, and fully sustains the assignment. *Marsh* v. *Billings*, 7 Cush. 322; *Croft* v. *Day*, 7 Beavan, 84; Codding-. ton Trade-Marks, section 122.

It appears from the complaint that the appellant purchased the right in question in February, 1877, and that this suit was commenced in February, 1880. It is alleged in the complaint that she had always intended to engage in the business as soon as she could, and that she still intends to do so. Did she only seek to recover damages, it may be that the delay would preclude her, but she asks, in this paragraph, that the appellee shall be enjoined from further use of the trade-mark. We think the delay, under the circumstances, will not preclude her from this relief. She did not intend to abandon, and therefore has not abandoned, her right, as to the future, to the exclusive use of her property in the trade-mark. Inability may prevent the use of the mark, but it will not confer upon others the right to use it, or constitute an abandonment. Browne Trade-Marks, sections 684, 685, and cases there cited.

In the case of *Amoskeag Manf. Co.* v. *Spear, suprà*, Judge DUER says: "The consent of a manufacturer to the use or imitation of his trade-mark by another may, perhaps, be justly inferred from his knowledge and silence; but such a consent, whether expressed or implied, when purely gratuitous,

may certainly be withdrawn, and when implied, it lasts no longer than the silence from which it springs; it is in reality no more than a revocable license."

We think the demurrer to the second paragraph should have been overruled.

It may be proper to add, that the first, second, third and fourth grounds of demurrer are not discussed by counsel, and, as we think they could not be sustained, they have not been particularly considered.

PER CURIAM.—It is therefore ordered, upon the foregoing opinion, that the judgment below be in all things reversed, at the costs of the appellee.