SCHNUR & COHAN, Inc., Appellant,

v.

ACADEMY OF MOTION PICTURE
ARTS AND SCIENCES,
Appellee.

Patent Appeal No. 6128.

United States Court of Customs
and Patent Appeals.

June 15, 1955.

Lawrence L. Colbert, Washington, D. C., and Richard S. Temko, New York City (Alexander Mencher and Charles E. Temko, New York City, of counsel), for appellant.

Fulton Brylawski and Herbert J. Jacobi, Washington, D. C., for appellee.

Before O'CONNELL, Acting Chief Judge, and JOHNSON, WORLEY, COLE and JACKSON (retired), Judges.

O'CONNELL, Acting Chief Judge.

This is an appeal from the decision of the Commissioner of Patents acting through the Assistant Commissioner, Hon. Daphne Leeds, 99 USPQ 316, who reversed the decision of the Examiner of Trade-Mark Interferences in a cancellation proceeding. The action of the commissioner thereby removed appellant's mark "Academy Award," used by it since 1939 on ladies' and girls' slips, from the register of Trade-Marks maintained under the Act of 1905 now 15 U.S. C.A. § 1051 et seq.

Appellee's action was based upon prior ownership and use of its world-renowned name or emblem, "Academy Award," annually presented on the basis of outstanding achievement in the American motion picture industry. The Academy of Motion Picture Arts and Sciences is a non-profit institution which was incorporated in 1927 under the laws of the State of California. It now consists of some 1800 members.

The proceeding in the Patent Office was instituted by appellee under section 14(c) of the Act of 1946, 15 U.S.C.A. § 1064(c), and sustained in view of Section 5(b) of the Act of 1905 which provides that "any name, distinguishing mark, character, emblem, * * * adopted by any institution, organization, club, or society which was incorporated in any State in the United States prior to the date of the adoption and use by the applicant" may not be registered as a trade-mark; and the fact that appellant's registration of "Academy Award" as a trade-mark for ladies' underwear falls within the category of non-registrable matter prohibited by the mandate of the statute.

Both parties took testimony, submitted briefs, and were represented by counsel at the oral hearing.

The examiner dismissed appellee's petition and held that by reason of alleged laches appellee was estopped to contest appellant's right to registration, citing Willson v. Graphol Products Co., Inc., 188 F.2d 498, 38 C.C.P.A., Patents, 1030; and Lightnin Chemical Co. v. Royal Home Products, Inc., 197 F.2d 668, 39 C.C.P.A., Patents, 1031.

The Acting Commissioner of Patents overruled the examiner's decision on that point, however, and in sustaining appellee's petition held that the doctrine of laches, affirmatively asserted as a defense by appellant, had no application to the facts of the instant case; that appellant's Registration No. 373,353 of appellee's emblem, "Academy Award," was placed on the register contrary to the prohibitory provisions of the Trade-Mark Act of 1905; that "the registration is and has been void since the date of issuance," and should be cancelled for the stated reason:

"In my opinion, its registration was clearly prohibited by Section 5 (b) of the Trade-Mark Act of 1905. The prohibition of the statute is absolute, and a registration issued contrary thereto is void *ab initio.*"

"To put it another way," said the Acting Commissioner, "a trade-mark which consisted of any name, distinguishing mark or emblem adopted and publicly used by any incorporated organization prior to the date of adoption and use by the applicant could not be registered." The Acting Commissioner of Patents thus rejected appellant's defense of laches:

"The application of the equitable principle of laches in this case de-

pends not upon the question of inexcusable delay in asserting rights as is ordinarily the case, but upon two questions, namely: (1) was the registrant's mark properly registered under the Act of 1905, and (2) if not, does the passage of time (ten years in this case) validate the registration? As stated above, the statute prohibited registration of the mark at the time it was registered. Passage of time cannot validate a void registration, no matter how large the registrant's business may have grown during the period the mark remained on the register. Laches is not available as a defense in an action to remove a void registration from the register."

Although relying on the validity of the conclusion reached by the examiner, appellant has failed to otherwise to discuss here the notable authorities, namely, Willson v. Graphol and Lightnin Chemical Co., supra, cited by the examiner in sustaining appellant's affirmative defense of laches.

██ Those cases establish that the court will sustain the equitable defense of laches, under the provisions of the Act of 1946, 15 U.S.C.A. § 1051 et seq., where in ignorance of the previous owner's registration, the newcomer innocently adopted and extensively exploited the same, while the owner himself stood idly by without asserting his rights, despite the constructive notice with which he was charged and endowed by the Act of 1946 by reason of the long and continuous existence of the newcomer's registration on the public records under the Act of 1905.

In Willson v. Graphol, supra, we held, among other things, that under the Trade-Mark Act of 1905 and other such acts prior to the Act of 1946, laches was no defense to a cancellation proceeding. The validity and reason for that holding was exemplified in Cluett, Peabody & Co., Inc. v. Hartogensis, 41 F.2d 94, 96, 17 C.C.P.A., Patents, 1166, where in the cancellation of a trade-mark we quoted from the following decisions of the Supreme Court, certain omitted matters not relevant here being indicated by asterisks:

"In the case of Menendez v. Holt, 128 U.S. 514, 9 S.Ct. 143, 145, 32 L. Ed. 526, which was also a trade-mark infringement case, the court affirmed its ruling in McLean v. Fleming, *supra* [96 U.S. 245, 24 L. Ed. 828], stating:

" 'Counsel in conclusion earnestly contends that whatever rights appellees may have had were lost by *laches,* and the desire is intimated that we should reconsider McLean v. Fleming, 96 U.S. 245 (24 L.Ed. 828), so far as it was therein stated that, even though a complainant were guilty of such delay in seeking relief upon infringement as to preclude him from obtaining an account of gains and profits, yet, if he were otherwise so entitled, an injunction against future infringement might properly be awarded. We see no reason to modify this general proposition * * *.

" 'The intentional use of another's trade-mark is a fraud; and when the excuse is that the owner permitted such use, that excuse is disposed of by affirmative action to put a stop to it. Persistence, then, in the use is not innocent, and the wrong is a continuing one, demanding restraint by judicial interposition *when properly invoked.* Mere delay or acquiescence cannot defeat the remedy by injunction in support of the legal right, unless it has been continued so long, and under such circumstances, as to defeat the right itself. Hence, upon an application to stay waste, relief will not be refused on the ground that, as the defendant had been allowed to cut down half of the trees upon the complainant's land, he had acquired by that negligence the right to cut down the remainder. Attorney General v. Eastlake, 11 Hare, 205 * * *.

Where consent by the owner to the use of his trade-mark by another is to be inferred from his knowledge and silence merely, "it lasts no longer than the silence from which it springs. It is, in reality, no more than a revocable license." Duer, J., Amoskeag Mfg. Co. v. Spear, 2 Sandf. 599 [4 Super. 599]; Julian v. Hoosier Drill Co., 78 Ind. 408; Taylor v. Carpenter, (Fed.Cas.No. 13784) 3 Story 458; (Fed.Cas.No. 13785) S.C. 2 Woodb. & Min. 1.'" [Italics supplied.]

Appellant properly observes in its brief that sections 44(g) and (h) of the Act of 1946 relate to the protection of trade-names against unfair competition; and that remedies authorized by the Act for the infringement of trade-marks, like similar provisions in the Act of 1905, shall be available, so far as they may be appropriate, in repressing acts of unfair competition. Champion Spark Plug Co. v. Sanders, 331 U.S. 125, 67 S.Ct. 1136, 91 L.Ed. 1386; Coty, Inc., v. Perfumes Habana, S. A., 190 F.2d 91, 38 C. C.P.A., Patents, 1180, 1185; Jewel Tea Co. v. Kraus, 7 Cir., 187 F.2d 278, 282.

An invalid trade-mark registered by the Patent Office, through inadvertence or otherwise, should be removed from the register by cancellation. In re St. Paul Hydraulic Hoist Co., etc., 177 F.2d 214, 215, 37 C.C.P.A., Patents, 751, 752. There the court in a unanimous decision, among other things, held:

"Indeed, if there should be found registered a mark truly descriptive, it would be no authority for granting registration of another descriptive mark. The proper procedure would be to cancel the first registration. The courts have stated this principle so often and it so fully harmonizes with common sense that it is not deemed necessary to cite authorities in its support."

On the same basis the tribunals of the Patent Office, in a decision which became final because it was not appealed, held that appellee's emblem, "Academy Award," having been illegally registered in 17 different instances by the Patent Office under the Act of 1905 because of the false representations made under oath by the newcomer, should be canceled on the petition of appellee under the specific authority enumerated in the enabling and retroactive provisions of the Act of 1946. Academy of Motion Picture Arts and Sciences v. Academy Award Products Co., 89 USPQ 451. Such procedure was adopted and properly applied by the Acting Commissioner of Patents in the instant case without resort to the discussion of any question of fraud.

In like manner, and in view of the prohibitory mandate of the statute, the courts in all jurisdictions have consistently refused to allow the applicant to register as a trade-mark the names of individuals, corporations, the nicknames or notations by which such corporations were known to the public, together with the emblems or slogans by which their goods or purposes were known or associated in the mind of the public. Coca-Cola Co. v. Koke Co., 254 U.S. 143, 41 S.Ct. 113, 65 L.Ed. 189; Haskelite Manufacturing Corp. v. Plymold Corp., 162 F.2d 464, 34 C.C.P.A., Patents, 1172; Dubonnet Wine Corp. v. Ben-Burk, Inc., 121 F.2d 508, 28 C.C.P.A., Patents, 1298; Cheek Neal Coffee Co. v. Hal Dick Mfg. Co., 40 F.2d 106, 17 C.C.P.A., Patents, 1103; In re Mason Tire & Rubber Co., 56 App.D.C. 170, 11 F.2d 556; Safeway Stores, Inc., v. Dunnell, 9 Cir., 172 F.2d 649, Id., 337 U.S. 907, 69 S.Ct. 1049, 93 L.Ed. 1719.

Appellee properly points out in its brief that the provisions of section 13 of the Act of 1905 with respect to the cancellation of invalid trade-marks are essentially identical with those respectively specified in section 14(c) of the Act of 1946, and that under both such sections marks granted contrary to the prohibitory mandate of section 5(b) of the Act of 1905 are subject to cancellation "at any time."

Appellant relies here upon two cases previously decided by this court as legal-

izing its appropriation of appellee's emblem. Neither of these cases was cited in the decisions of the Commissioner of Patents or the examiner in the instant case, and neither case is analogous to the facts in the case at bar; namely, Alligator Co. v. Larus & Bro. Co., Inc., 196 F. 2d 532, 39 C.C.P.A., Patents, 939, and Pep Boys, Manny, Moe, and Jack v. Edwin F. Guth Co., 197 F.2d 527, 39 C.C. P.A., Patents, 1015. Each of those cases involved an opposition proceeding, and not a cancellation; and in each case the newcomer's mark at issue had been registered under the Act of 1946 and not under the Act of 1905.

In dismissing the opposition proceedings there instituted against a newcomer, which had appropriated the identical mark previously used by the opposer on unrelated goods, and in overruling the concurring decisions of the tribunals of the Patent Office, the court proceeded in accordance with the long established rule of procedure that the validity of an original owner's mark cannot be challenged in an opposition proceeding. In such cases, we have consistently held under the Act of 1905, that the injured party's remedy is to file a petition for cancellation of the infringing mark under section 13 of the Act of 1905. Revere Paint Co. v. Twentieth Century Chemical Co., 150 F.2d 135, 32 C.C.P.A., Patents, 1096, 1101, and authorities therein cited. Accordingly, a mark registered after the dismissal of the Notice of Opposition in this court was subsequently removed from the register by the action between the same parties in another jurisdiction wherein the validity of the mark was challenged and found to be invalid. Nancy Ann Storybook Dolls v. Dollcraft Co., 9 Cir., 197 F.2d 293; Act of 1946, sec. 37.

· Although appellant in its brief avoids the mention of Willson v. Graphol, supra, it nowise directly argues that appellant's situation in the instant case is the same as the situation as the innocent party found himself in the cited case. Nevertheless the import of appellant's argument here is that because of appellee's alleged laches, appellant stands to sustain a great financial and commercial loss if its mark is now removed from the register, and for that reason appellant here should be legally authorized to maintain its mark on the register.

Appellant frankly submitted undisputed testimony to the effect that during the period of its use as a trade-mark of appellee's emblem "Academy Award," amounting to approximately 10 years, appellant had sold 13 million or more of slips at a sales price of more than $10 million or more, and added:

"Q68. Mr. Cohan, between the years 1949 to date, about how many millions of slips were distributed throughout this country, approximately, referring to your prior figures? A. Up to the end of 1951, probably close to thirteen or fourteen million slips.

"Q69. Among those thirteen or fourteen million slips, between the period of 1939 and to date, how many would you approximate went to the State of California? A. Well, I would venture to estimate that perhaps between 3 and 5 per cent.

"Q70. 3 and 5 per cent of the figure you just gave us is what? A. It must be about three-quarters of a million slips.

"Q71. So that three-quarters of a million slips under the name "Academy Award" were sold and shipped throughout the State of California; am I correct? A. That is right.

"Q72. In that connection, what percentage of that three-quarters of a million, in your opinion, was distributed in Los Angeles? A. The biggest portion of it.

"Q73. The biggest portion? A. Definitely."

On the disposition of the question as to the development of a large and lucrative business by a newcomer under the simulated mark of a rival owner, this court has held: "The mere fact that it

has made a great commercial success in using the term * * * is no justification for a continuation of the registered status of the trade-mark involved." Barber-Colman Co. v. Overhead Door Corp., 65 F.2d 147, 151, 20 C.C.P.A., Patents, 1118. Assuming, arguendo, that by some stretch of the imagination, petitioner might have benefited by appellant's spurious use of appellee's "Academy Award" emblem, nevertheless such use would be of no avail in appellant's effort to bolster its case here, as thus noted, under the Act of 1905, in Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co., 316 U.S. 203, 207, 62 S.Ct. 1022, 1025, 86 L.Ed. 1381:

> "There may well be a windfall to the trade-mark owner where it is impossible to isolate the profits which are attributable to the use of the infringing mark. But to hold otherwise would give the windfall to the wrongdoer. In the absence of his proving the contrary, it promotes honesty and comports with experience to assume that the wrongdoer who makes profits from the sales of goods bearing a mark belonging to another was enabled to do so because he was drawing upon the good will generated by that mark. And one who makes profits derived from the unlawful appropriation of a mark belonging to another cannot relieve himself of his obligation to restore the profits to their rightful owner merely by showing that the latter did not choose to use the mark in the particular manner employed by the wrongdoer."

Appellee of course has sought to recover no profits or damages for the misappropriation of its emblem, and the cited excerpt is presented to show the attitude of the Supreme Court toward an unwarranted infringement.

The record fails to show the expenditure of any significant amount of money spent by appellant in the development of such an overwhelming volume of business, all of which from the record presented here appears to be an unqualified windfall. The fact that appellant may now have a large investment in a trade-mark, consisting of a world-renowned emblem of another, and that appellant appropriated the same to its own use without the consent or under control of the owner of the emblem, does not preclude such owner from equitable and legal redress in the federal courts; in all of which, as appellant states in its brief, there is now "only one form of action which encompasses both legal and equitable remedies." See Stern Apparel Corporation v. Raingard, Inc., D. C., 87 F.Supp. 621.

Some years after the date upon which appellant, unknown to appellee, launched its business in ladies' undergarments, appellee under a legitimate license agreement between itself and the Bulova Watch Company, and for a large sum of money, $145,000, permitted the latter to use appellee's emblem, "Academy Award," and its "Oscar" in the advertisement in the press, on the radio and on television, of Bulova watches. Bulova, having thus acquired certain defined privileges, exceeded the provisions of its contract, and the emblem "Academy Award" was used in a manner that the Federal Trade Commission considered susceptible to the conclusion that Bulova's products had been submitted to a competitive test with the watches of other jewelers and as a result had been given appellee's "Academy Award."

The Federal Trade Commission, with the consent of appellee, thereupon intervened to rectify Bulova's advertising procedure by an order to cease and desist in the use of appellee's "Academy Award" and the statuette "Oscar" that goes with it—

> "* * * unless, in direct connection with the use of such words, depictions or simulations it is clearly and adequately disclosed that the right to use such words, depictions or simulations is by virtue of a li-

*censing agreement entered into by and between Academy of Motion Picture Arts and Sciences and Bulova Watch Company, Inc., and is not representative of any meritorious award made on the basis of comparative tests with other watches.* [Italics supplied.]"

■ Every corporation, organized for profit or under the law on a non-profit basis, may properly enter into business arrangements, raise revenue, and promote and sustain the objects for which the corporation was organized. Dupont de Nemours & Co. v. Celanese Corp. of America, 167 F.2d 484, 35 C.C.P.A., Patents, 1061. There this court held that the mark of a licensor was not abandoned, although the licensee in its advertisements, as in the instant case, did not state that the mark it used was that of the licensor.

It is to be noted that those receiving the Academy Award for outstanding achievement in the motion picture field had every legal and equitable right to use such award to their commercial and financial advantage.

Appellant knows from the Academy's testimony, if not otherwise, that the "Academy Award" and the "Oscar" that goes with it have been given on a competitive basis for the best costume, (1) in black or white or (2) in colors, used in motion pictures produced here in various recent years. Appellant has had no such award from appellee for ladies' and misses' undergarments, nor has it had from the Academy any license, revocable or otherwise, which authorized the use of appellee's emblem of world-wide reputation.

The public, judging from the vast volume of appellant's reported business, seems to gather that appellant's business is in fact sponsored and vouched for by the Academy. There is no evidence that appellant has put forth any effort whatsoever to correct that impression or to inform the public by a proper notice that it has received no award on a competitive basis from the Academy or that appellant's mark has been used by it without the consent of the appellee.

The findings of facts made by the examiner, as well as Assistant Commissioner Leeds, on the appellant's unproved point of "unclean hands" have been fully warranted and sustained, in effect, by the judgment of the United States District Court for the Southern District of New York in the recent case of Academy Award Products, Inc., v. Bulova Watch Co., Inc., 129 F.Supp. 780.

■ Appellant in the final analysis urges that appellee has failed to prove that the appropriation of its name or emblem has resulted in any damage to appellee. The point is without merit. In Howard Co. v. Baldwin Co., 48 App. D.C. 437, 443, our predecessor in the patent jurisdiction held: "But, where the party is seeking to prevent the adoption of his name as a trademark or the cancelation of its registration, his action is grounded upon the invasion of a property right inhering in the name itself, and damage will be presumed." See also Yale Electric Corporation v. Robertson, 2 Cir., 26 F.2d 972; Asbestone Co. v. Philip Carey Mfg. Co., 41 App.D.C. 507. In the case last cited, the court further indicated that where the name of another sought to be registered by the applicant is incapable of exclusive use and registration, the registration thereof will not make it a valid trade-mark.

In view of the conclusions hereinbefore stated, we deem it unnecessary to discuss other points raised by appellant and the decision of the Commissioner of Patents is hereby affirmed.

Affirmed.

JACKSON, J. (retired) recalled to participate herein in place of GARRETT, C. J.

WORLEY, J., did not participate in the decision of this case.