TISCH HOTELS, INC., and Americana
Hotel Operating Corporation,
Plaintiffs,

v.

ATLANTA AMERICANA MOTOR HO-
TEL CORPORATION, Defendant.

Civ. A. No. 8281.

United States District Court
N. D. Georgia,
Atlanta Division.

March 15, 1966.

Judgment and Decree May 3, 1966.

744

ORDER OF COURT

## ORDER OF COURT

HOOPER, District Judge.

In this action plaintiffs seek an injunction against the defendant to prevent the use by defendant in connection with the operation of its motor hotel in the City of Atlanta of a name which might be confused with names used by plaintiffs for their hotels. Plaintiffs' case is predicated upon trademarks registered with the United States Patent Office, and also based upon general principles of law governing unfair competition. Many of the facts in this case and the questions of law raised are contained in the case of Tisch Hotels, Inc. v. Americana Inn, Inc. (7 Cir.) 350 F.2d 609, decided September 14, 1965.

## FINDINGS OF FACT

1– Plaintiffs' first hotel using the word "Americana" was established in Miami Beach in 1955. Defendant's plans to establish the Atlanta Americana Motor Hotel (which opened in May, 1962) came out in August, 1960. Defendant admits that when choosing the name of its hotel defendant knew of the use by plaintiffs of the word "Americana" and defendant considered adopting that name, also the name "Fontainebleau", a well-known hotel also on Miami Beach.

2– Plaintiffs opened a hotel in New York, using the name "Americana" in September, 1962 and in San Juan, Puerto Rico, beginning operations in November, 1962.

3– In February, 1961 plaintiffs applied for Service Mark No. 177,926, which was granted September 11, 1962, and on September 7, 1962 applied for registration of Service Mark No. 152,729, consisting of the word "Americana" in connection with hotel, restaurant, banquet and catering services.

4– This Court is not too much concerned with Service Mark No. 177,926, as it does not appear defendant at any time sought to imitate the same.[1] Ex-

1. For description of that Service Mark see 350 F.2d, at p. 613, which omits, however, hemisphere of North and South America over which the first part of the word "Americana" was superimposed. Defendant's symbol differs entirely from

cepting for the use of the word "Americana" the two Service Marks of plaintiffs and defendant would not be confused. As to plaintiffs' Service Mark No. 152,729, however, consisting entirely of the word "Americana," it makes little difference in this case whether plaintiffs are proceeding on the basis of a trademark (as ruled by the Seventh Circuit, see 350 F.2d, p. 615), or proceeding on the basis of unfair competition under Georgia laws, as hereinafter pointed out.

5— Plaintiffs, knowing of publicity by defendant in August, 1960 concerning opening by defendant of its Americana Motor Hotel, wrote defendant's president on November 30, 1960, making objection to the use of the word "Americana", this being some eighteen months before defendant's opening in May, 1962. Considerable correspondence followed, including certain inquiries by defendant of plaintiffs which were not adequately answered. In January, 1961 counsel for plaintiffs advised defendant that Tisch Hotels, Inc. had registered the name "Americana", but this appears to be in error, for it appears (Tr. 11) "plaintiffs' first federal trademark issued September of 1962" (see defendant's Exhibit 11.27). This series of correspondence terminated February 23, 1961, at which time, referring to plaintiffs' letter of November 30, 1960, plaintiffs' counsel advised that should there be any unauthorized use of the word "Americana" counsel had been instructed to take such steps as are necessary to protect his clients' rights. It therefore appears that defendant in opening its motel under the name of "Americana" did have full knowledge of plaintiffs' rights to the use of that name in plaintiffs' hotels at Miami Beach, New York and Puerto Rico.

6— Counsel for defendant, with zeal and ability, has insisted that subsequent to the foregoing plaintiffs actually consented to defendant's use of the word "Americana", and by its conduct barred its right to insist now upon an injunction. Were it not for many decisions of all the courts in this land to the contrary, and hereinafter cited, this Court would be inclined to rule that plaintiffs' conduct, as now herein described, would be sufficient to bar plaintiffs from the relief sought.

In October, 1962 there was an opening of plaintiffs' "Americana Hotel" in New York, attended by Dr. Marvin Goldstein, president of defendant, who on October 19, 1962 advised Robert Tisch, President of Loew's Hotels, Inc. (subsidiary of plaintiff corporation), that the writer had directed his clerk to make reservations with plaintiffs' New York hotel as often as he could for defendant's customers who were going to New York, for which Mr. Tisch expressed his thanks. On November 1st William K. Stern, Assistant to the President of Loew's Hotels, Inc., wrote Dr. Goldstein requesting that Atlanta Americana Motor Hotel advise inquirers as to plaintiffs' other properties, referring them to plaintiffs' Atlanta office, and stating that the New York Americana Motor Hotel "will see to it that in the future anyone booked for hotels staying in Atlanta is to be put at the Atlanta Americana Motor Hotel", and furthermore stated plaintiffs' other hotels would be advised to do the same.

This Court finds that the foregoing clearly shows consent by the plaintiffs to the use by defendant of the name of defendant's motel, and that this consent continued up until the time of the filing of this suit. It does not appear, however, that during this interval of time there was any abandonment by plaintiffs of the use of the name "Americana" on their hotels, nor does it appear that plaintiffs' acquiescence during such

the foregoing in its design, as the word "Americana" is not written in script, the letter "A" beginning the words Atlanta and Americana is tall in the form of a spire and blacked in, and to the left of the same there is a shield, on each side of the shield an eagle with spread wings, and under the eagle the words "Atlanta Americana."

period of time caused defendant to make any unusual expenditures other ·than those usually made in operating its·motel and advertising the same. · Plaintiffs' conduct amounted to a license by the plaintiffs to defendant to use said name, but this license was revoked by plaintiffs, no doubt on account of increasing confusion arising out of the use by defendant and other hotels and motels of the word "Americana."

7– Defense counsel have also vigorously urged that the word "Americana" has for many years been a word of such general descriptive use, and that it was therefore so weak as a trademark, that plaintiffs could not make its use by others the subject matter of injunctive relief. Defendant has proven the extensive use of the word "Americana" for many years prior to its adoption by either plaintiffs or defendant in connection with many articles, products, and things. However, prior to its adoption by plaintiffs for a hotel or motel, it had not been so used. Defendant also has proven without dispute that there are a number of hotels in this country by the same name, as to which no confusion exists. That is undoubtedly true, but each case of trademark infringement, or unfair competition, must be decided upon its own facts. The matter of possible confusion ·in the instant case will be hereinafter discussed.

8– Immediately upon the opening of defendant's Americana Motor Hotel in May, 1962 there does not appear to be a considerable amount of confusion, though of course, it is generally difficult in cases of confusion in the public mind to prove very many actual instances. It is no doubt for that reason that the courts have adopted the rule that it is probable confusion rather than actual confusion upon which a decision turns.[2] On May 8, 1963, however, plaintiffs' president undertook to ascertain the extent of confusion, and results of this survey is shown by a group of letters identified as Plaintiffs' Exhibit 13. It appears con-

fusion existed in Boston where plaintiffs' office had received requests for space in the Atlanta Americana, and inquiries from travel agents. Plaintiffs' Nashville, Tennessee office reported one telephone call seeking reservation at Atlanta. Report from Dallas indicated a number of calls for the Atlanta Americana. The New York office reported request for Atlanta reservation from a travel agency. A group in Miami looking for a convention site thought Atlanta Americana was affiliated with plaintiffs, but no actual evidence was introduced to show that plaintiffs' hotel at Miami Beach actually lost the convention on account of that confusion. It is also true that there are material differences between plaintiffs' hotels operating under the name "Americana" and that of the defendant. At plaintiffs' hotels the rates are higher, the conventions are larger, and emphasis is put upon a decor that represents all the Americas, North and South. There are rooms and other things which carry the atmosphere of various nations. Defendant's motel on the other hand, emphasizes all things American as pertains to the United States. Some of plaintiffs' hotels are further identified as "Tisch Hotels", some use the emblem heretofore registered and described above, others do not. Both plaintiffs and defendant do national advertising, but plaintiffs by far a greater amount. Also, as the years go by, there is more and more travel between Atlanta and other cities in which there are "'Americana" hotels or motels. This Court will take cognizance of the fact that Atlanta is the transportation center of the entire southeast as to both railroads and airlines. That there is likelihood of confusion seems clear.

It does not appear in this case that there is any substantial danger of actual competition between plaintiffs and defendant, and there is none in Atlanta at the present time, although there is an intimation that plaintiffs are negotiating for the purchase of a hotel in Atlanta now under construction, and may desire

---

2.. See Conclusion of Law No. 7.

to use the word "Americana" in connection therewith. There is, however, likely confusion as to source and ownership between plaintiffs' "Americana Hotels" and defendant's "Americana Motel".

9– Additional Facts will be stated in the Conclusions of Law.

10– In Summary the Court finds that plaintiffs were using the word "Americana" in connection with their hotels prior to defendant's use thereof; that defendant made use of said word over plaintiffs' objections and with knowledge of plaintiffs' use; that use of the word "Americana" in connection with hotels or motels is associated in the minds of many of the public with plaintiffs; that there is likelihood of confusion; that plaintiffs are entitled to an injunction preventing further use by defendant of the name "Americana".

## CONCLUSIONS OF LAW

1– This Court has jurisdiction of this action upon allegations of infringement of two trademarks, and also allegations of unfair competition coupled with diversity of citizenship.

2– It is well established that a trademark, or service mark,

"* * * is not a right in gross or at large, nor is there property in a trade-mark except as a right appurtenance to an established business or trade in connection with which the mark is employed. The right to a particular mark grows out of its use and not its mere adoption. The law of trade-marks is only a part of the broader law of unfair competition." American Foods, Inc. v. Golden Flake, Inc., 5 Cir., 312 F.2d 619, p. 625.[3]

"Registration of a trade-mark confers only procedural advantages and does not enlarge the registrant's substantive rights. * * * The ownership of a trade-mark rests on adoption and use, not on registration." Faciane v. Starner,[4] 5 Cir., 230 F.2d 732(7), at p. 738.

In order for plaintiff to enjoin defendant from further use of the word "Americana" in connection with operation of defendant's motel, plaintiff must prove plaintiff's prior use of that word in connection with plaintiff's hotels, and must show that there is a likelihood of confusion should defendant be permitted to use the same word in connection with the operation of defendant's motel in Atlanta, Georgia.

3– It appears without dispute that defendant in this case knew, before opening its motel under that name in Atlanta, that the plaintiff had previously opened a hotel in New York using that name, and that plaintiff had registered such name and obtained the two trademarks as shown by the record in this case. In order to recover in this case it is not necessary that plaintiff prove that defendant was guilty of any intentional fraud, or intent to cause confusion. However, the Court of Appeals of the Fifth Circuit, construing the laws of Georgia, has stated:

"The implicit rationale is the ancient doctrine that a man intends the natural and probable consequences of his acts. When he knows of a trade name used by another person and, notwithstanding this knowledge, uses a similar name in his own business operations, the courts will presume that he has encroached upon the name of the other intentionally and fraudulently." Thompson v. Alpine Motor Lodge, Inc., 5 Cir., 296 F.2d 497(1), at p. 499.

---

3. The cited case covers most of the principles involved in the instant case. It has particular reference to contention of defense counsel that defendant opened its motel in the Atlanta area and built up a business there, and therefore it is contended that any injunction issued against the defendant should omit the Atlanta area. In the case cited that principle was applied, but the case is easily distinguished on its facts from the instant case.

4. That case is likewise cited by defense counsel and holds no violation of trademark shown where two restaurants a great distance apart used the same name.

In discussing whether such cases involve federal trademarks, or unfair competition, the court further stated:

"The basic principle of the law of unfair competition is that no one has a right to dress up his goods or business or otherwise represent the same in such manner as to deceive an intending purchaser and induce him to believe he is buying the goods of another, and that no one has a right to avail himself of another's favorable reputation in order to sell his own goods. The present tendency is to decide every case on the ground of unfair competition, by making the decision turn on whether or not the effect of what was done is to pass off the goods or business of one man as the goods or business of another." (See 296 F.2d, p. 499)

■ However, it is not necessary in all cases to show that there is a likelihood that the defendant is actually passing off his goods as the goods of another. It is sufficient if defendant causes confusion as to the origin or source of the goods, and in the case of motels and hotels as to the correct name of the owner and operator. Such was the situation in a case by these same plaintiffs against another defendant (a case on which plaintiffs herein largely rely), to-wit, Tisch Hotels, Inc. v. Americana Inn, Inc., 7 Cir., 350 F.2d 609, at p. 612 wherein the court used the following language:

"Plaintiffs do not contend that they and defendants are in direct competition or that there is a likelihood that a traveler will become confused and register at defendants' hotel in Chicago thinking it is the Miami Beach Americana. Their position is that a prospective patron seeing the 'americana' mark on defendant's motel would be likely to confuse it with the same mark used by plaintiffs, and that, being confused as to the source of the services, if the patron is dissatisfied with defendants' services, plaintiffs would suffer, since their 'reputation is no longer within [their] own control and there is an injury, unless there is

a clear distinction between the marks.' "

The case just cited makes many other rulings which are pertinent to the instant case, but it differs from the instant case in that it involved the use by the defendant therein of plaintiffs' trademark No. 177,926 (see 350 F.2d, at p. 613), and defendant's imitation of the same (see Finding of Fact No. 4).

It is held that:

"The fact that defendants were in good faith and had no actual intention to mislead the public was not a defense but only a factor to be considered along with the other evidence. It is enough that such result is probable." American Foods, Inc. v. Golden Flake, Inc., (5 Cir.) 312 F.2d 619(13), at p. 625.

4– As stated above,

"A finding of fraudulent intent or bad faith is not essential to the award of an injunction for trademark infringement where likelihood of confusion exists."

However,

"The inference of likelihood of confusion is therefore readily drawn because the adoption itself indicates that defendants expected that likelihood to their profit." Tisch Hotels, Inc. v. Americana Inn, Inc., 7 Cir., 350 F.2d 609, 613.

■ 5– Defense counsel contends that the word "Americana" is a descriptive word which through the years has been commonly used in connection with many activities, and therefore it is such a weak trademark that it is entitled to a narrow restricted protection. As to that contention, however, the Seventh Circuit Court of Appeals ruled:

"The word 'Americana', as applied to hotel and related services, is, in our opinion, an arbitrary mark, since it in no way suggests or describes hotel services, and it cannot be said that it is weak and entitled to little protection." (350 F.2d, at p. 611).

■ Assuming, however, that the word "Americana" had, prior to plain-

tiffs' use of the same in connection with its hotels, been used by many other people (as is shown by the evidence) for other purposes, and assuming that it is a "weak" trademark, that is only one of the factors to be considered. Trademarks

"* * * are driven by the trademark owner's efforts to popularize his mark. The commercial potency of the trade-mark is directly proportionate to the investment and the energy with which it is developed. The expenditure of money gives rise to a reasonable prospect or expectation of popularity. If, before it is realized, a new competitor intervenes, the presumptive popularity, like the presumptive trade, will be protected." Callmann on Unfair Competition, 2nd Ed., p. 1198.

The extent to which plaintiffs have advertised and promoted their hotels, under the name of "Americana", is described by the court in the case of Tisch Hotels, Inc. v. Americana Inn, Inc., 7 Cir., 350 F.2d 609, at p. 612.

While the above authority refers to "a reasonable prospect or expectation of popularity," at the time of defendant's use of the name it has been ruled that even though a defendant's use

"was not unlawful, because of lack of actual knowledge of the plaintiffs' motel, * * * in the future encroachment will be unlawful since the litigation has now authoritatively put the defendant on notice." Thompson v. Alpine Motor Lodge, Inc., 5 Cir., 296 F.2d 497.

It would seem therefore that the expansion of plaintiffs' business since the date of defendant's use of such name would be relevant.

6— Defense counsel contends that plaintiffs' action should be barred on account of laches upon the part of plaintiffs in bringing the action, and also upon the ground of estoppel by virtue of plaintiffs having over a period of time cooperated with defendant by means of referring customers to the defendant, the latter doing likewise.

As to the first defense of laches the decisions in this country over a long period of time have uniformly ruled contrary to defendant's claim.

In the case of McLean v. Fleming, 96 U.S. 245, 24 L.Ed. 828, (decided in 1877) the court stated:

"Unreasonable delay in bringing a suit is always a serious objection to relief in equity; but cases arise in litigations of the kind before the court where the complainant may be entitled to an injunction to restrain the future use of a trade-mark, even when it becomes the duty of the court to deny the prayer of the bill of complaint for an account of past gains and profits." (See 96 U.S. p. 251).

The court granted an injunction against future violations even though it stated that:

"Acquiescence of long standing is proved in this case, and inexcusable laches in seeking redress" (see p. 258).

That case has frequently been cited with approval. See Menendez v. Holt, 128 U. S. 514, 523, 9 S.Ct. 143, 32 L.Ed. 526, wherein it is said:

"Mere delay or acquiescence cannot defeat the remedy by injunction in support of the legal right, unless it has been continued so long, and under such circumstances, as to defeat the right itself. * * * Acquiescence, to avail, must be such as to create a new right in the defendant."

An exception the court said would lie in case of abandonment by a plaintiff, but

"That would require proof of nonuser by the owner or general surrender of the use to the public." (See p. 524, 9 S.Ct. p. 145).

See Morgenstern Chemical Co. v. G. D. Searle & Co., 3 Cir., 253 F.2d 390, p. 394, and cases cited in footnote 7. See also, Allen v. Standard Crankshaft & Hydraulic Company, Inc., D.C., 231 F.Supp. 301.

7— Defense counsel states that plaintiffs' right to prevail in this case depends upon whether the court follows the

decision of Tisch Hotels, Inc. v. Americana Inn, Inc. (7 Cir.) 350 F.2d 609 supra, or on the other hand follows certain decisions of the Fifth Circuit Court of Appeals.

Defendant relies largely on the case of El Chico, Inc., et al. v. El Chico Cafe et al. (5 Cir.) 214 F.2d 721. But, there are points of difference in the case just cited and the instant case. In the former there was no confusion shown and no likelihood of confusion. Not only was the phrase "El Chico" a weak and common name, but it was used by a number of restaurants over the country.

Defense counsel also cites several cases wherein the second user of a trademark or trade name, in good faith, at a great distance from the place where the originator is using it, has been allowed to build up a business over a period of years, and in such cases the injunction against the use of the name would be limited to only those areas wherein the first user was the first one to employ such name. One of these cases is American Foods, Inc., et al. v. Golden Flake, Inc., 5 Cir., 312 F.2d 619 (5 Cir.). The plaintiff therein contended,

"that it was entitled to injunctive relief as to the entire United States rather than as it was afforded for its trade area only."

The court pointed out that ninety-five per cent of the total business of the plaintiff was done in Alabama, and

"this was the situation after thirty-eight years of doing business."

■ Abandonment is in the nature of a forfeiture and requires strict proof. American Foods, Inc. v. Golden Flake, Inc., 5 Cir., 321 F.2d 619 (10, 11).

■ Closely akin to defendant's contention that plaintiffs are barred by laches, is defendant's contention that plaintiffs cooperated with defendant over a period of time whereby each referred to the other inquiries as to their hotels and motels. As a matter of first impression it would appear such conduct upon the part of plaintiffs would bar this action for injunction. After further study, however, it appears that such conduct by plaintiffs amounted to no more than a license by plaintiffs to defendant to use the name "Americana" at the will of the plaintiffs, such license, however, being revocable at any time by plaintiffs. The courts have compared this situation to one wherein the owner of property sat by and cut down half of the trees on his land, the courts ruling that the plaintiff by such acquiescence does not give defendant

"* * * by that negligence the right to cut down the remainder." See Schnur & Cohan, Inc. v. Academy of Motion Picture Arts & Sciences, 223 F.2d 478, at p. 480, 42 C.C.P.A. 963, citing Menendez v. Holt, 128 U.S. 514, 9 S.Ct. 143, 32 L.Ed. 526, and other cases.

■ Plaintiffs by their conduct impliedly gave defendant the right to use said name, but plaintiffs did not thereby abandon their rights, nor did they cause the defendant by their conduct to make any unusual expenditures or incur any liabilities out of the usual course of business. See headnotes (3) & (4) of the case just cited.

Significantly, however, it added the following language:

"There was no evidence presented that plaintiff might expand its business to other areas. Its advertising program covered no other area."

■ It is clearly shown in the instant case, however, that plaintiffs did intend to expand their trade area, and in fact have done so to a remarkable extent. The large amounts spent by plaintiffs for national advertising from the first, as when the Miami Beach hotel was opened, clearly show the intent to do a nationwide business, and this is subsequently shown by the considerable number of hotels later opened up by the plaintiffs. Furthermore, plaintiffs' primary complaint herein is not so much as to actual competition, as to confusion in the ownership of its Americana hotels. A number of decisions have pointed out the unique character of hotels and motels, for they are used by people traveling from one city to another. Persons

who have patronized plaintiffs' Americana hotels in other cities, on coming to Atlanta are likely to assume that defendant's Atlanta Americana Motel is also operated by the plaintiffs. The similarity in question must only be such

"* * * as is likely to mislead customers of ordinary caution and prudence into the belief that the services of the defendant are those of the plaintiffs."

See First Federal Savings & Loan Association v. First Finance and Thrift Corporation, 207 Ga. 695, at p. 697, 64 S.E. 2d 58, and cases cited. If the similarity

"* * * is well calculated to mislead and deceive the unwary"

that is all that is necessary as to confusion. McLean v. Fleming, 96 U.S. 245, p. 256, 24 L.Ed. 828. It has also been said:

"The law, however, protects not only the intelligent, the experienced, and the astute. It safeguards from deception also the ignorant, the inexperienced, and the gullible." Fleischmann Distilling Corp. v. Maier Brewing Company, 9 Cir., 314 F.2d 149, at p. 156.

8— By way of summary then this Court is ruling:

Plaintiffs first used the word "Americana" in connection with its hotels, though the name had theretofore been used in regard to many other things and products. Defendant knowing of plaintiffs' such use, and over plaintiffs' objections, used the word "Americana" which was used by plaintiffs and covered by one of plaintiffs' service marks. That defendant continued to use the same even though plaintiffs protested. That such use by defendant with prior knowledge of plaintiffs' use would raise a presumption defendant was using it for defendant's benefit. Under these circumstances actual confusion would not have to be proven, but plaintiffs have proven that actual confusion does exist in a number of places where plaintiffs maintain either an office or an office and a hotel, including Chicago, New York, Boston and other points.

A Judgment and Decree will be entered preventing defendant's further use of plaintiffs' service marks. However, such injunction shall not be effective until time for appeal has elapsed or until after appeal of judgment and decree of this court has been affirmed by the Circuit Court of Appeals.

## JUDGMENT AND DECREE

This action having duly come on to be heard on December 13, 1965, before Hon. Frank A. Hooper, one of the Judges of this Court, and plaintiffs having appeared on the trial by Edenfield, Heyman & Sizemore and Paul, Weiss, Rifkind, Wharton & Garrison, their attorneys, and defendant having appeared on the trial by Arnall, Golden & Gregory, its attorneys, and the Court having heard the allegations and proofs of the parties, and due deliberation having been had, and an Order of Court having been filed in this action on March 15, 1966, directing that defendant cease using plaintiffs' service marks,

Now, therefore, it is hereby adjudged and decreed:

### I.

This Court has jurisdiction of the parties and the subject matter. The Complaint states two valid claims against the defendant.

### II.

After six months from date defendant, its agents, attorneys, employees, servants, privies, representatives, successors, and assigns, and any and all persons acting by, through or under authority from defendant, either separately or jointly, are enjoined and permanently restrained from using the word "Americana" either as a service mark or as a part of advertising in connection with the sale or offering for sale of hotel, restaurant or banquet services, or doing any other acts likely to dilute plaintiffs' service marks or likely to induce a belief on the part of the public that defendant's services emanate from plaintiffs, or that defendant is in any way connected or affiliated with or licensed, sanctioned or approved by plaintiffs.

### III.

Notwithstanding anything set out in Section II above, defendant, its agents, employees, representatives, servants, successors and assigns shall be entitled and have the authority to exhaust in the ordinary course of usage its existing supplies of expendable material such as matchbooks, post cards, soap, shoe covers, linens, pens, and like material containing the word "Americana" provided that if and when such supplies are reordered that the word "Americana" not appear.

### IV.

The defendant, its successors and assigns, or any person acting by, through or under authority of the defendant shall be entitled to use the word "American", "American" or "Atlanta American" either as a service mark or as a part of advertising in connection with the sale or offering for sale of hotel, restaurant, or catering services.

### V.

Defendant's Counterclaim is dismissed.