**EL CHICO, Inc. et al.**

v.

**EL CHICO CAFE et al.**

**No. 14776.**

United States Court of Appeals,
Fifth Circuit.

July 30, 1954.

Coke and Coke, John N. Jackson, Clinton Foshee, Dallas, Tex., Francis C. Browne, Washington, D. C., for defendant-appellant, El Chico Canning Co., Inc.

Clarence G. Campbell, Clarence P. Greer, New York City, for plaintiff-appellant, El Chico, Inc.

Gene Lary, John A. Erhard, Dallas, Tex., for defendant-appellees, El Chico Cafe, et al.

Before HUTCHESON, Chief Judge, and RIVES, Circuit Judge, and RICE, District Judge.

RIVES, Circuit Judge.

Plaintiff sought to enjoin all the defendants from using the trade name El Chico in their businesses. Jurisdiction was based on diversity of citizenship. The district court enjoined the defendant El Chico Canning Company, Inc., and dismissed the complaint as to the other defendants.[1] Plaintiff appeals from that part of the judgment which dismisses the complaint against all other defendants, and the defendant El Chico Canning Company, Inc., appeals from that part of the judgment enjoining it.

For the purposes of appeal, the findings of fact made by the district court

are fully accepted by the defendant-appellant, and plaintiff-appellant concedes in brief that such findings "* * * are based on the overwhelming preponderance of evidence, except as to the interstate operation of the defendants other than the El Chico Canning Company, Inc. * * *." However, in a part of its argument to which we shall refer, the plaintiff-appellant implicitly attacks also the finding, "* * * that there was no fraud, nor deceit by the defendants in the continuation of their businesses, nor in their original establishment."

The plaintiff's restaurant, El Chico, at Greenwich Village, New York, has acquired national and international fame, and caters to customers and distinguished visitors from different parts of the United States and from many other nations. It is Spanish in character, atmosphere, decorations, food and entertainment, and is considered one of the four or five leading night clubs in New York City. It was founded by a native of Spain, Benito C. Collada, in 1925 at 245 Sullivan Street, New York, and opened in 1930 under the corporate name of El Chico, Inc. at its present location, 80 Grove Street, New York. It has consistently enjoyed very wide and favorable publicity through newspapers, periodicals, and trade publications, extensive radio broadcasting and presently through radio and television appearances of El Chico entertainers and musicians. In the twenty years from 1931 to 1951, its investment for advertising and promotion amounted to $489,000.

The five defendant Cuellar brothers are of Mexican descent, born in Texas. In October, 1940, two of the Cuellar brothers opened a restaurant known as El Chico Cafe at 3514 Oak Lawn Avenue, Dallas, Texas, which is still in operation at the same address. The first El Chico Cafe prospered, and in October, 1946, the other three Cuellar brothers joined the first two in opening a second El Chico

---

1. The findings of fact and conclusions of law of the district court are reported in 110 F.Supp. 640, et seq. To avoid con-

fusion, we shall refer to the parties as plaintiff and defendants, plaintiff-appellant and defendant-appellant.

Cafe in Dallas. In November, 1947, El Chico number three was opened in Fort Worth. In January, 1949, El Chico number four was opened in Fort Worth. In June, 1949, El Chico number five was opened in Dallas. In March, 1950, El Chico number six was opened in Shreveport, Louisiana. In October, 1950, an El Chico Cafe was opened at the State Fair Grounds in Dallas. In September, 1951, El Chico number seven was opened in Longview, Texas, by El Chico Cafe, Inc., a Texas corporation. In November, 1949, El Chico Canning Company, Inc. was organized in Dallas. The defendants' restaurants do not furnish entertainment, and are not within the class known as night clubs. They are Mexican as distinguished from Spanish in food, furnishings and decorations.

On October 8, 1940, an assumed name certificate was filed with the County Clerk of Dallas County, showing "El Chico Cafe" to be owned by Gilbert Cuellar and Mack Cuellar. On September 18, 1947, these two registered the name El Chico together with a design or symbol [2] not claimed to be infringing with the Secretary of State of Texas pursuant to the Texas Statutes.[3] Later the name and symbol were assigned to a new partnership composed of the five brothers, and that partnership has issued franchise agreements for their use by the various cafes and the canning company. From 1941 to 1951, the defendants have spent approximately $100,000.00 in advertising through newspapers, radio and other media.

In November, 1949, the partnership composed of the five Cuellar brothers filed an application in the United States Pat-

---

2. This symbol includes the words El Chico together with a representation of the bust of a young Mexican male wearing a sombrero and having a serape thrown over his left shoulder and cactus at each side of the male character, all on a substantially oval background, employing a predominately green, red and white color combination.

3. Articles 850–851, Title 23—Brands and Trade-Marks, Revised Statutes of Texas, 1925:

"*Art. 850. Infringement enjoined.* Every person, association or union of workingmen, incorporated or unincorporated, having adopted a label, trade mark, design, device, imprint or form of advertisement, as aforesaid, may proceed by suit to enjoin the wrongful manufacture, use, display or sale of any such label, trade mark, design, device, imprint or form of advertisement, and the manufacture, use, display or sale of any such counterfeit or imitation; any court having jurisdiction thereof may grant an injunction to restrain such manufacture, use, display or sale, and shall award the plaintiff in such suit such damages resulting from such wrongful manufacture, use, display or sale as by him may have been sustained. Where such association or union is not incorporated, suits under this law may be commenced and prosecuted by any officer or member of such association or union in his own name, for himself and for the use and benefit of such association or union.

"*Art. 851. Trade mark filed, etc.* Every person, association or union of workingmen, incorporated or unincorporated, that has heretofore or shall hereafter adopt a label, trade mark, design, device, imprint or form of advertisement, shall file the same in the office of the Secretary of State by leaving two fac simile copies, with the Secretary of State, and said Secretary shall return to such person, association or union so filing the same, one of said fac simile copies along with and attached to a duly attested certificate of the filing of same, for which he shall receive a fee of one dollar. Such certificate of filing shall in all suits and prosecutions under this chapter be sufficient proof of the adoption of such label, trade mark, design, device, imprint or form of advertisement, and of the right of such person, association or union to adopt the same. No label, trade mark, design, device, imprint or form of advertisement shall be filed as aforesaid that would probably be mistaken for a label, trade mark, design, device, imprint or form of advertisement already of record. No person, or association shall be permitted to register as a label, trade mark, design, device, imprint or form of advertisement any emblem, design or resemblance thereto that has been adopted or used by any charitable, benevolent or religious society or association, without their consent."

ent Office for registration of the name and symbol as a trade-mark. The application lay on file without anything happening until September, 1950, when one of the Cuellars went to Washington for the purpose of getting action on it. Publication of the mark followed in the Official Gazette of the United States Patent Office. An attorney friend of the plaintiff called the publication to plaintiff's attention and thus it was that sometime near Chrismas, 1950, the plaintiff learned for the first time of the use of the name El Chico by the defendants.

■ The plaintiff does not contend that it was entitled to protection of its trade name under the Trade Mark Act in effect when in March, 1931, it filed with the Department of Commerce a record of its incorporation papers and name "El Chico, Inc.", and received an acknowledgment stating, "You are advised that the papers relating to El Chico, Inc., have been recorded with this office, relating to the names of corporations in the trademark division as of March 9, 1931. The recording fee of four dollars has been received." Instead, the plaintiff acquiesces in the district court's conclusion that " * * * it is evident that the law of unfair competition must rule this case." In legal effect the plaintiff's position is similar to that of the petitioner in Pecheur Lozenge Co. v. National Candy Co., 315 U.S. 666, 667, 62 S.Ct. 853, 86 L.Ed. 1103, where the Court said:

"But an examination of the original exhibits, not printed in the record, and of petitioner's brief on the merits here, discloses that the registration referred to is that of petitioner's labels under the Copyright Law of the United States, 17 U.S. C.A. § 1 et seq., and not registration under the Trademark Law. It thus appears that petitioner has alleged no cause of action under the Copyright Law and is not entitled to the benefits of registration under the Trademark Law. The only cause of action that this record could possibly support is for unfair competition and common law 'trademark infringement', to which local law applies. See Fashion [Originators'] Guild v. [Federal] Trade Commission, 312 U.S. 457, 467, 468, 668, 61 S.Ct. 703, 707, 708, 85 L.Ed. 949."

It is clear, we think, that in the absence of a Federally registered trade-mark, issues of substantive law arising in actions for the infringement of a trade name, or for unfair competition, are governed by state law even though the acts complained of may be committed in various states and may affect interstate commerce. Philco Corporation v. Phillips Mfg. Co., 7 Cir., 133 F.2d 663, 148 A.L.R. 125; Annotation 148 A.L.R. 155; 52 Am.Jur., Trademarks, Tradenames, etc., Secs. 90, 89.

■ Plaintiff-appellant's statement of points to be relied on on appeal[4] was unduly restrictive, but clearly did not mislead any of the parties nor result in a record inadequate for the consideration of the questions actually presented, and hence will not preclude us from such consideration. Foremost Dairies v. Ivey, 5 Cir., 204 F.2d 186, 188.

As to the name, the district court made the following finding:

"I find that the two words, 'El Chico,' were arbitrary trade names,

4. "I. That the defendants other than the defendant, El Chico Canning Co., Inc., were not engaged in interstate commerce.
"II. That the defendants other than El Chico Canning Co., Inc., were in business exclusively in Texas.
"III. That the issue with respect to the interstate commerce of the defendants other than the El Chico Canning Co., Inc., was improperly decided and improperly relied on by the District Court disregarding the fact that the interstate na-

ture of defendants' business had been conceded in the pleadings by the defendants.
"IV. That the defendants' operation cannot be divided and that if any part of the operation is in interstate commerce the entire operation is in interstate commerce.
"V. That the dismissal of the Bill of Complaint as to all defendants other than the El Chico Canning Company is therefore an error as a Conclusion of Law."

insofar as they related to both plaintiff and the defendants. But that the phrase, 'El Chico,' is without subject, and is merely the beginning of a sentence, and is, and was, and has been used for a long time upon many sorts of articles, and as a part of persons' names." [110 F.Supp. 642]

The plaintiff does not and cannot claim to be the originator of El Chico as a trade-mark. One of the defendants' exhibits shows twenty-seven trade-mark registrations of Chico, El Chico and similar names for various products and articles, several of them prior to 1925, when plaintiff's restaurant was first founded. A Moorish king of Granada, who reigned from 1482 to 1483 and again from 1486 to 1492 when he was driven out by King Ferdinand and Queen Isabella, was called El Chico. Chico has frequently been used both as a surname and as the first name or nickname of persons. In Mexico, a mining town called El Chico is located in the State of Hidalgo, and there are six towns named Chico in the United States. A river 130 miles long in northeast Luzon, Philippine Islands is called Chico, and that is the name of two rivers in South Argentina. A Spanish American restaurant of much less fame than the plaintiff is located in New York City called Gay Chico Restaurant. Small restaurants are located in New York State bearing that name, an El Chico in Buffalo, New York, an El Chico Cafe in Binghamton, New York, and another Chico's Restaurant in Binghamton. There are three restaurants in West Virginia, two in Pennsylvania, and one in Illinois bearing the name El Chico. An El Chico Market is located in Newark, New Jersey. The evidence discloses such extensive use of the words El Chico as to bring them within the classification of a "weak" trade name which could be used without infringement in the absence of actual confusion or intent to deceive, especially where the marketing territories were different. Arrow Distilleries v. Globe Brewing Co., 4 Cir., 117 F.2d 347; see

52 Am.Jur., Trademarks, Tradenames, etc., Sec. 54.

The district court found:

"That there is no testimony of any confusion occasioned by customers of the plaintiff by reason of the later establishment of the defendants' business. Nor that there has been any pecuniary damage suffered by the plaintiff by reason of the establishment of the defendants' businesses."

■ In the absence of proof of any confusion or of at least probable injury to the plaintiff's business, the law is too well settled to require further discussion that no relief may be granted on the ground of unfair competition. Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713; United Drug Company v. Theodore Rectanus Co., 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141; Pulitzer Publishing Co. v. Houston Printing Co., 5 Cir., 11 F.2d 834, affirming D.C., 4 F.2d 924; Fidelity Bond & Mortgage Co. v. Fidelity Bond & Mortgage Co. of Texas, 5 Cir., 37 F.2d 99; ABC Stores, Inc. v. T. S. Richey & Co., Tex.Civ.App., 266 S.W. 551; Henke & Pillot v. Hanovice, Tex.Civ.App., 77 S.W.2d 303; Plaza Co. v. White, Tex.Civ.App., 160 S.W.2d 312; Goidl v. Advance Neckwear Co., 132 Tex. 308, 123 S.W.2d 865; Huth v. Rosenzweig, La.App., 27 So.2d 742.

■ The cases relied upon by the plaintiff were mostly cases in which the court found an express fraudulent intent. Buckspan v. Hudson's Bay Co., 5 Cir., 22 F.2d 721; White Tower System v. White Castle System, 6 Cir., 90 F.2d 67; Maison Prunier v. Prunier's Restaurant & Cafe, Inc., 159 Misc. 551, 288 N.Y.S. 529; Stork Restaurant, Inc., v. Marcus, D.C. E.D.Pa., 36 F.Supp. 90, and Stork Restaurant, Inc. v. Sahati, 9 Cir., 166 F.2d 348. The courts are quick to grant relief in cases of fraud or bad faith, even though the businesses of the litigants are not in competition. 52 Am.Jur., Trademarks, Tradenames, etc., Sec. 101. One

**726**

of the reasons is well expressed in A.L.I. Restatement of Torts, Vol. III, p. 595.

"But if he adopts his designation with the intent of deriving benefit from the reputation of the trademark or trade name, his intent may be sufficient to justify the inference that there is confusing similarity. Since he was and is intimately concerned with the probable reaction in the market, his judgment manifested prior to the controversy, is highly persuasive. His denial that his conduct was likely to achieve the result intended by him will ordinarily carry little weight."

Plaintiff-appellant seems to argue that the district court's finding of no fraud or deceit on the part of the defendants is inconsistent with its finding "That at the time of the establishment of the defendants' businesses, they had knowledge of the plaintiff's business in New York." A careful consideration of the record and exhibits leaves us in no doubt that the finding, " * * * that there was no fraud, nor deceit by the defendants in the continuation of their businesses, nor in their original establishment" is not only not clearly erroneous (Rule 52a, F.R.C.P.), but is sustained by the preponderance of the evidence. The court further found that "they also knew that the phrase 'El Chico' was used on many other products." In short, though the defendants knew of plaintiff's use of the name, they further knew that the plaintiff did not have an exclusive right to such use as against a noncompeting business, where there was no likelihood of confusion as to source, and in the absence of an intent to benefit from the reputation or good will of the plaintiff.

Plaintiff-appellant insists that persons hearing its radio broadcasts in Texas or elsewhere might think that the defendants' cafes were branches of the plaintiff, or on coming to New York might fail to be a customer of the plaintiff because they had theretofore eaten at one of the defendants' cafes. That argument seems to us rather far fetched and to indicate more a possibility than a probability of damage and is contrary to the findings of the district court, that there is no testimony of any confusion and no pecuniary damage suffered by the plaintiff.

As to El Chico Canning Company, it is not entirely clear why the district court granted the writ of injunction. It was making sales in 32 states, but there was no proof that New York or the New York territory was included in those states. On each of the labels on the cans was plainly printed in type easy to read, "Mexican Brand Food Made in Texas." So long as the labels give that plain indication, it is hard for us to see how the canned goods can be connected with plaintiff's New York restaurant as a source.

The plaintiff-appellant further argues that the canning business is a natural expansion of any food preparing business, such as a restaurant of plaintiff's national reputation, and, hence, that the use of the name El Chico by the Canning Company tends to prevent the natural expansion of plaintiff's business. In the twenty-five years operation of plaintiff's restaurant before the plaintiff had heard of the defendants' use of the trade name El Chico, there had never been any indication of an intention to enter the canning business, and we do not think that, under those circumstances, plaintiff's rights in the trade name against a non-fraudulent user can be extended to the canning business as a natural expansion of plaintiff's restaurant business.

The judgment of the district court granting the injunction against the Canning Company is reversed, and that part of the judgment dismissing the complaint as to all other parties is affirmed. The costs are taxed against El Chico, Inc.

Affirmed in part and reversed in part.