Onesime FACIANE, trading and doing business as White Kitchen, Appellant,

v.

Harry F. STARNER, Appellee.

No. 15634.

United States Court of Appeals Fifth Circuit.

Feb. 29, 1956.

Rives, Circuit Judge, dissented.

Sidney W. Provensal, Slidell, La., Ford L. Thompson, Harry Morrison, Meginniss, Thompson & Morrison, Tallahassee, Fla., for appellant.

No appearance for appellee.

Before HUTCHESON, Chief Judge, and RIVES and CAMERON, Circuit Judges.

CAMERON, Circuit Judge.

We are asked here to reverse as clearly erroneous the finding of the court below in favor of defendant in an action for violation of trade-mark rights and unfair competition. Plaintiff-appellant, Faciane, filed a complaint against Starner defendant-appellee, alleging that he had violated plaintiff's registered trade-

mark containing the words "White Kitchen", and had engaged in unfair competition by operating a restaurant under the same name. Relief by way of injunction and damages was prayed, but the latter were waived during the trial.[1]

Plaintiff operated a restaurant at Slidell, Louisiana, before 1930 and later established another restaurant on U. S. Highway 90 in Louisiana, both of which used the name White Kitchen in connection with their operations. Defendant operated a restaurant in Tallahassee, Florida, using the same name. The Court below filed written findings to the effect that plaintiff had failed to carry the burden of establishing his right to an injunction and dismissed his complaint with prejudice.

The evidence upon which the findings were based disclosed that plaintiff established a restaurant business at Slidell, Louisiana, using the name White Kitchen, and that he registered this trade name with the Commissioner of Patents in 1930.[2] This certificate of registration was renewed as of September 23, 1950, "under the provisions of the Trademark Act of 1946 [15 U.S.C.A. § 1051 et seq.]".[3] In these restaurants he has

1. Jurisdiction was claimed solely under 28 U.S.C.A. § 1338. The complaint was deficient in that it nowhere alleged that plaintiff used the trademark in interstate commerce. The answer denied the jurisdiction of the Court, but the matter was not pressed and both sides went ahead and introduced evidence. Under Fed. Rules Civ.Proc. rule 54(c), 28 U.S.C.A., we will proceed to examine the case made by the evidence rather than that made by the pleadings alone.

2. A reproduction of the registered trademark is set out at this point:
   "Registered Sept. 23, 1930
   Trade-Mark 275,475
   Renewed September 23, 1950, to Onesime Faciane,
   Slidell, La.
   United States Patent Office
   Onesime Faciane, Doing Business as White Kitchen, of Slidell, Louisiana
   Act of February 20, 1905
   Application filed March 20, 1930.
   Serial No. 297,616
   White Kitchen
   Brand

   | In this space is depicted the image of a kneeling Indian holding a stick on which a piece of meat is being cooked over a campfire. The tepee and rustic surroundings are in the background. |
   | --- |

   Statement
   To the Commissioner of Patents:
   Onesime Faciane, a citizen of the United States of America residing at Slidell, Louisiana, and doing business at Slidell, St. Tammany Parish, Louisiana, under the assumed name of White Kitchen, has adopted and used the trade-mark shown in the accompanying drawing, for Barbeque Meat and Sandwiches made therefrom, in Class 46, Foods and ingredients of foods, and presents herewith five specimens showing the trade-mark as actually used by applicant upon the goods, and requests that the same be registered in the United States Patent Office in accordance with the act of February 20, 1905.

   The trademark has been continuously used and applied to said goods in applicant's business since January 2nd, 1930.

   The trademark is applied or affixed to the goods, or to the packages containing the same by placing thereon a printed label on which the trademark is shown.

   The word 'Brand' is disclaimed apart from the other features of the mark shown in the drawing.

   The undersigned hereby appoints Clarence A. O'Brien, registration No. 11,216, of Security Savings & Commercial Bank Bldg., Washington, D. C., his attorney to prosecute this application for registration with full power of substitution and revocation, to make alterations and amendments therein, to receive the certificate, and to transact all business in the Patent Office connected therewith.
   Onesime Faciane."

3. The record fails to reflect the validity of the original registration, which could be accomplished only if the applicant was engaged in interstate commerce. The first definite showing of any activity in such commerce was that plaintiff began, in 1938, to manufacture a barbecue sauce and to ship it in interstate commerce. The Court below made no finding as to the validity of the original registration, and we pass on to a consideration of the aspects of the case upon which the decision below was based.

specialized in barbecued meats, but has conducted a general restaurant business and has operated a bar at each location as an important part thereof. About 1938, he began the manufacture of a barbecue sauce at a separate place of business situated in New Orleans, which he has shipped in interstate commerce and sold under the name "White Kitchen Original Indian Style Brand Barbeque Steak Sauce".[4]

September 27, 1947, defendant bought a restaurant business in Tallahassee, Florida (about 300 miles from plaintiff's businesses) which had been established in 1939 and had since operated continuously under the name of White Kitchen. Defendant had operated the restaurant under lease prior to purchasing it, and the complaint alleges and the answer admits that defendant had been operating this restaurant "continuously since about January of 1947". Defendant's business has throughout been largely local, making a specialty of fried chicken and hot biscuits, and he has never operated a bar in connection with it.[5] The businesses of plaintiff and defendant continued to operate, each without the knowledge of the other, until 1951 when plaintiff learned of defendant's operation and sent a representative to interview defendant and to notify him of the claim that he was illegally using plaintiff's registered trade name. Immediately upon receiving that notice, defendant registered his trade name with the proper authorities in the State of Florida.

The only portion of plaintiff's registered mark which defendant had ever used was the words, White Kitchen. It was undisputed that he had never made use of the Indian insigne and had never attempted to imitate or copy the script of printing of the words, White Kitchen, as used by plaintiff. The only advertising defendant had ever done was to hand business cards to prospective customers showing that he was operating the small restaurant under the name of White Kitchen.

The central motif of plaintiff's trademark as shown by the exhibits is the image of the Indian kneeling before the campfire cooking a piece of meat in a setting suggesting the usual habitat of the Indian in the wild out-of-doors. In all of the advertising done by plaintiff the Indian has been the most prominent and noticeable feature. At each restaurant plaintiff had set up a life-size image of this Indian at a conspicuous place along the highway, under which was shown the words, White Kitchen. On the place mats forming one of the chief means of advertising employed by plaintiff, the Indian has occupied the place of prominence and directly under the depiction have appeared the words: "Reg. U. S. Pat. Off."

The plaintiff did not introduce in evidence any labels which were used in connection with the barbecue sauce, but one cut in a newspaper advertisement shows a one gallon bottle on which appears a label with the Indian image in a circle at the top, under which appear the words, "White Kitchen Original Indian Style Brand Barbeque Sauce". The same inscription claiming registration in the United States Patent Office appears immediately under the image of the Indian.[6]

4. The complaint does not mention the manufacture or sale of this sauce or ask any relief with respect to this separate enterprise of manufacture and sale of the sauce. Evidence of this activity was admitted without objection, and we pass on to consider the merits as developed by that evidence under Rule 54(c).

5. The effective date of the Lanham Act was July 5, 1947, and it appeared that defendant had been engaged in the good faith use of the words "White Kitchen" in the operation of his business prior to that time. The evidence further showed that a restaurant had operated at Carrabelle, Florida under the name White Kitchen for more than twenty-five years and one was in operation at Jacksonville, Florida, and defendant had seen the advertisement of one in the State of Texas.

6. These advertisements are signed, "White Kitchen Brand, Inc. 2818 Florida Avenue, New Orleans, Louisiana". If the adver-

As stated, the only claim asserted in the complaint related to alleged unfair competition by defendant with the business of the two restaurants of plaintiff. But, under the evidence, it is apparent that the plaintiff intended to claim relief with respect to the two separate businesses, the restaurant business and the sauce business. It is apparent further that plaintiff intended that his claim embrace the charge that defendant was engaged in unfair competition as well as violation of his registered trade-mark. These two separate elements of plaintiff's claim are, under the terms of the Lanham Act and 28 U.S.C.A. § 1338, entitled to be prosecuted in the same action.

■ As far as the two restaurants of plaintiff and the one restaurant of defendant are concerned, it is clear that there was no violation of the Lanham Act, 15 U.S.C.A. § 1051 et seq., because the restaurant business of plaintiff was carried on entirely within the State of Louisiana and that of defendant was confined entirely to the limits of the State of Florida, and neither has touched interstate or foreign commerce. Under the case cited by the Court below,[7] and also under the recent well reasoned and documented decision of this Court in El Chico, Inc., v. El Chico Cafe, 5 Cir., 1954, 214 F.2d 721, this portion of plaintiff's case goes out altogether insofar as recovery is sought under the Lanham Act. In other words, as regards plaintiff's two restaurants, he is relegated entirely to the common law of unfair competition for any remedy he may have against defendant.

■ As to that segment of his action, plaintiff failed to make out a case at all under well established principles governing such actions for unfair competition.[8] There was no proof of actual competition between the restaurants, although plaintiff's manager stated that some customers had asked him whether plaintiff had opened a business in Tallahassee. When asked by the Court below whether these customers had talked about eating at defendant's restaurant in Tallahassee, he replied, "No, sir. They did not say they stopped there and ate, they never did say that. They said, 'What did you all do, open up a place in Tallahassee?' They would say that we see there is a White Kitchen in Tallahassee." The same witness also stated categorically that he had never heard of any complaint about the conduct of defendant's place and promptly repudiated the idea that plaintiff had ever lost the sale of a meal by reason of the fact that the eating facilities of defendant had been patronized or confused with plaintiff's.

■■ Proof is also entirely lacking as to the usual concomitants of unfair competition: simulation by defendant of the name, symbols or devices of plaintiff, with the object of inducing purchase of his merchandise under the false impression that it originated with plaintiff; attempt by defendant to "palm off" his products as those of plaintiff; practices designed to pirate the trade of plaintiff[9]; the employment of imitative de-

---

tisement speaks the truth and the sauce business is operated by a corporation bearing the name as indicated, plaintiff would have no standing to assert any rights growing out of that business.

7. United States Printing & Lithograph Co. v. Griggs, Cooper & Co., 1929, 279 U.S. 156, 158, 49 S.Ct. 267, 73 L.Ed. 650: "But neither authority nor the plain words of the Act allow a remedy upon it for infringing a trade-mark registered under it, within the limits of a State and not affecting the commerce named."

8. Under El Chico, supra, that portion of

the action is governed by the local law of Florida. No Florida cases are called to our attention, and we find none which cast any controlling light on the question. The Florida Statute Law is contained in 16 Florida Statutes Annotated, § 506.06 et seq., but we find nothing noteworthy in those statutes, and we are relegated to the general law on the subject. El Chico furnishes the answer to many phases of the problem.

9. One of the fundamental purposes set forth by the Congressional Committee handling the Lanham Act expressed the

vices to beguile patrons to purchase defendant's food rather than plaintiff's; or the use of any other means incompatible with concepts of common business integrity. The evidence fails to show that defendant had ever indulged in any of those practices, innocently or otherwise. In the absence of such a showing, we cannot do other than sustain the finding of the Court below on this point and cannot do better than adopt a sentence from the Supreme Court's decision in Goodyear's Rubber Mfg. Co. v. Goodyear Rubber Co., 1888, 128 U.S. 598, 604, 9 S.Ct. 166, 168, 32 L.Ed. 535, in expressing the general rule: "Relief in such cases is granted only where the defendant, by his marks, signs, labels, or in other ways, represents to the public that the goods sold by him are those manufactured or produced by the plaintiff; thus palming off his goods for those of a different manufacture, to the injury of the plaintiff."

From the undisputed facts recited above it is plain,[10] moreover, that plaintiff may not stake his case upon the bare words, "White Kitchen", but, at most, is entitled to have the words considered as a part of the composite trademark cen-

tered in the image of the kneeling Indian. This fact is recognized by the emphasis placed upon the Indian in all of plaintiff's advertisements, one of the most-used shibboleths being: "Stop at the Sign of the Indian".

■ It is clear that, if the entire ensemble constituting plaintiff's certificate of registration (Note 2, supra) was entitled to registration as a trademark, it was made so only by the image of the kneeling Indian in the act of barbecuing meat. That was the only feature which was unique or original. The simple words "White Kitchen" indicated that the user was operating a kitchen, a place where food was prepared and dispensed and that the kitchen was painted white, symbol of cleanliness and purity. These are simple everyday words, having a clear and universally accepted meaning, and are descriptive of the business being operated in connection with their use. " ' * * * no one can appropriate as a trademark a generic name or one descriptive of an article of trade, its qualities, ingredients, or characteristics, or any sign, word, or symbol which, from the nature of the fact it is used to signify, others may employ with equal

---

idea this way: " * * * Where the owner of a trade-mark has spent energy, time, and money in presenting to the public his product, he is protected in his investment from its misappropriation by pirates and cheats." See Commentary on the Lanham Trademark Act by Daphne Robert preceding the Act as set forth in 15 U.S.C.A. Chap. 22, p. 288.

10. Appellant relies heavily on our case of Rhea v. Bacon, 5 Cir., 1937, 87 F.2d 976. A superficial glance at the facts there involved will show that it does not rule this case at all. There, defendants had sold the physical properties and also the rather fanciful name, Inn-By-The-Sea, to plaintiffs, whereupon they opened up a business in direct competition with that of plaintiff. At the entrance to the new hotel defendants duplicated the name and even the effigies, consisting of blue elephants, which plaintiff was using. Defendants designedly misled the public into believing that both hotels were under the same management and deliberately attempted to get for themselves the ben-

efit of the advertising plaintiffs had done and to draw to the new hotel the good reputation which the old one had established. These deliberate efforts resulted in actual confusion in the public mind. Those facts do not apply here at all.

Appellant also relies on the decision of the Ninth Circuit in Stork Restaurant, Inc., v. Sahati, 1948, 166 F.2d 348. Aside from the reputation and achievements of the plaintiff, so fabulous as to give it unique rights, the vital differences in the facts show that the present case cannot be governed by that one. To begin with, plaintiff's name, The Stork Club, was entirely arbitrary and fanciful and the insigne of a stork standing on one leg and wearing a high hat added to the distinctiveness. The defendant reproduced and used both, and the Court held that the facts showed clearly that the defendant's imitation was a deliberate effort to "ride the coattails" of plaintiff and capitalize on its good will and reputation in defendant's vicinity, and held also that the likelihood of confusion was very great.

truth.'" Standard Paint Co. v. Trinidad Asphalt Co., 1911, 220 U.S. 446, 453, 31 S.Ct. 456, 55 L.Ed. 536. And cf. Squirrel Brand Co. v. Barnard Nut Co., 5 Cir., 1955, 24 F.2d 840, 845. It is, therefore, plain that plaintiff did not make out a case for relief under the common law doctrine of unfair competition.

It remains but to test whether the restaurant business conducted by defendant and the use of the name White Kitchen constituted an infringement of plaintiff's registered trademark as applied to the business of manufacture and sale in interstate commerce of plaintiff's barbecue sauce. Appellant claims that the Lanham Act is more favorable to him and that, under the terms of that Act, he was entitled to relief under the proof made by him in the Court below.[11]

■■■■ Substantially all which has been said supra concerning common law actions for unfair competition applies equally to this portion of the opinion.[12] The rule is well stated in 87 C.J.S., Trademarks, Etc., § 169, pp. 495–500: "Registration of a trade-mark confers only procedural advantages and does not enlarge the registrant's substantive rights. * * * The ownership of a trade-mark rests on adoption and use, not on registration * * *. Registered trade-marks are limited by the claim, and applicant is concluded as to date of adoption and user by his sworn statement made part of his application. * * * The exclusive right to use the mark is limited to use on the class of goods for which it was registered as set forth in the statement filed in the patent office, and to goods of substantially the same descriptive properties, and to protection against such use as is likely to deceive or confuse. * * *"

■■■■ In Squirrel Brand Co. v. Barnard Nut Co., supra, 224 F.2d at page 844, the basic test was set out by us in these words: "This contention fails to grasp that, fundamentally, deception, actual or probable, is the essence of an action for infringement or unfair competition. The test is whether there is a probability that the average person will be so confused by the use of the device complained of as to believe that the products offered by the infringer were produced by the trademark owner,—that there is likelihood that prospective purchasers will be misled to appellant's damage. The application of these tests to the facts be-

11. We pass over the obvious impediments in the way of appellant's invoking the Lanham Act: The fact that plaintiff-appellant was doing no interstate business in 1930 when the trademark was registered, that the certificate of registration described only a local restaurant business, and did not mention the manufacture, shipment or sale of sauce; the fact that defendant-appellee was engaged prior to July 5, 1947, the effective date of the Lanham Act, in the legitimate use of the name White Kitchen in his restaurant business and had been so engaged through himself and predecessor for many years; the fact that plaintiff-appellant did not apply for registration of his claimed trademark under Sections 1 and 2 of the Lanham Act, 15 U.S.C.A. §§ 1051 and 1052, so as to acquire, as far as he might, the rights thereby conferred, but, on the other hand, applied merely for a renewal of the registration of 1930 as provided in Sec. 9 of the Lanham Act, 15 U.S.C.A. § 1059. And we proceed with a discussion of the action as if it were governed in all respects by the Lanham Act.

12. The chief rights added by the Lanham Act to such an action are those defined in 15 U.S.C.A. § 1057(b), making a certificate of registration prima facie evidence of "the validity of the registration, registrant's ownership of the mark, and of registrant's exclusive right to use the mark in commerce in connection with the goods or services specified in the certificate * * *"; by Section 1072, making registration of a mark constructive notice of the registrant's claim of ownership thereof; and by Section 1114, establishing liability on "any person who shall, in commerce, (a) use * * * any reproduction, counterfeit, copy, or colorable imitation of any registered mark in connection with the sale, offering for sale, or advertising of any goods or services on or in connection with which such use is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods or services * * *."

fore us do not lead to the conclusion that appellee was using a colorable imitation of appellant's trademark so as to bring about confusion or deception on the part of the average prospective purchaser."

The same conclusion is inescapable here. Plaintiff's sauce was shipped all over the United States, including Florida, but the evidence of competition at Tallahassee, where defendant did a purely local business, was vague and meager. When asked to name the towns in Florida to which shipments of sauce had been made, the manager of plaintiff's manufacturing plant read out from his records seventeen cities, but not Tallahassee. When the Court remarked that he had left out that city, plaintiff's attorney attempted to come to the rescue,[13] but the testimony brought out fell far short of establishing such a clash of business interests and activities at this crucial point as would sustain the burden of showing competition between the respective products and the likelihood of confusion. It is difficult to perceive that even the most gullible would be likely to be deceived or confused into thinking that a barbecue sauce, distributed through jobbers under the name of "White Kitchen Original Indian Style Brand Sauce", accompanied by the picture of the kneeling Indian, was the product of a small restaurant operator engaged only in serving customers who came to his modest place of business.

The procedural aids furnished by the Lanham Act, therefore, do not make a case for plaintiff. The presumptions created by the Act must yield to the facts which preponderate heavily in favor of defendant-appellee on all of the vital issues of the case.

We find ourselves in agreement with the findings of the Court below and ap-

prove them and are unable to declare them clearly erroneous. The judgment is, therefore,

Affirmed.

RIVES, Circuit Judge: I dissent.

RIVES, Circuit Judge (dissenting).

While I agree that appellant is entitled to no relief, I think that the district court lacked jurisdiction.

Clearly, appellant's trademark (footnote 2 to majority opinion) is limited for use upon goods of the type therein described. It cannot protect the appellant in the operation of its restaurant for "service marks" first became registrable under the Lanham Act in 1946. 15 U.S.C.A. §§ 1053, 1127. See the Commentary by Miss Daphne Robert preceding the Lanham Trade-Mark Act in 15 U.S.C.A. at pages 269 and 270. Appellant's trademark was originally registered in 1930, and the registration was simply renewed under the Lanham Act in 1950.

No facts were alleged or proved to show that the appellee used the registered mark or any colorable imitation of it upon or in connection with the sale of any such goods, or was in any way guilty of infringement as defined in the Lanham Act. 15 U.S.C.A. § 1114(1). The only claimed infringement, alleged or proved, was that the appellee established and operated a restaurant under the trade name "White Kitchen".

That claim is too unsubstantial, I think, to support any dependent jurisdiction of the federal district court over appellant's claim for unfair competition. 28 U.S.C.A. § 1338(b). A closely analogous situation was treated by Judge Learned Hand in American Auto Ass'n v. Spiegel, 2 Cir., 205 F.2d 771, 773, 774.[1]

---

13. Here is the testimony which followed the Court's remark and the only testimony on the subject: "Q. Have you shipped your White Kitchen Sauce to a distributor in Tallahassee? A. Yes, Sir, we have. "Q. Do these other distributors trade some of their trade in Tallahassee? A. I could not answer direct-

ly but I imagine they do, I imagine Jacksonville and Tampa evidently cover this section."

1. The holding as expressed in the third headnote:
    "Claim of automobile club that its trade-mark AAA, enclosed in an oval, was infringed by defendant's unauthor-

I think, therefore, that the district court was without jurisdiction.

If there were any reasonable possibility of appellant's proving a meritorious case of unfair competition, after possibly amending his complaint to show diversity jurisdiction, I would advocate remanding the cause without specific direction. I agree, however, with the majority that the evidence fails entirely to establish a case of unfair competition. That being true, when the district court lacked jurisdiction, we should not affirm on the merits, but should vacate the judgment and remand the case with directions to dismiss the complaint for want of jurisdiction, though taxing all costs against the appellant.

So thinking, I am constrained respectfully to dissent.

Kalodner, Circuit Judge, dissented.

ized display at his filling station of such mark was to unsubstantial to support any dependent jurisdiction of federal district court over club's claim for unfair competition, under the Judiciary Act. 28 U.S.C.A. § 1338(b); Lanham Trade-Mark Act, § 32(1) (a), 15 U.S.C.A. § 1114(1) (a)."